UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80334-Civ-ZLOCH/Snow

RENEE BETTIS,

      Plaintiff,

      vs.

TOYS "R" US - DELAWARE, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendant's Motion for Summary Judgment (Docket Entry 39), which was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

### I. PROCEDURAL HISTORY

The complaint was filed April 6, 2006, alleging gender discrimination under Title VII, 42 U.S.C. § 2000e et seq., violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, et seq. The plaintiff alleged that although when hired she was told that she would be promoted from assistant manager to store manager within six months, and although she was told that she was a driven and focused employee, after she disclosed her pregnancy she was given a temporary assignment as acting store manager. A loss prevention audit revealed that the plaintiff had violated petty cash policies, although she alleged that others,

including senior management, did so also.  She also alleged that she was falsely accused of taking an improper markdown for furniture she purchased.  She was told she was discharged for the policy violations of not properly ringing up the petty cash items. On February 22, 2007, the Court granted leave to amend to add a claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601 et seq.  The amended complaint alleges: Count 1 - Title VII discrimination in the terms and conditions of employment based on gender; Count II - discriminatory discharge under Title VII because of gender; Count III - PDA claim for discrimination in the terms and conditions of employment based on pregnancy; Count IV - discriminatory discharge under the PDA because of pregnancy; Count V - FCRA claim for discrimination in the terms and conditions of employment based on gender; Count VI - interference with exercising FMLA leave, and Count VII - discriminatory discharge under the FCRA because of gender.

On July 10, 2006, the Court issued an order setting the pretrial conference for June 29, 2007, and requiring the pretrial stipulation to be filed no later than June 15, 2007.   While discovery could continue until five days before the pretrial conference, dispositive motions were due April 30, 2007.

Discovery proceeded with difficulty.  The plaintiff failed to produce documents.  The deposition of the plaintiff had to be continued because the documents had not been produced. The plaintiff only partially complied with a March 28, 2007, Order

2

compelling better responses to interrogatories, resulting in a motion for sanctions. On April 26, 2006, the Court issued a second Order compelling better responses and an award of monetary sanctions against the plaintiff. On May 8, 2007, the defendant filed a third motion to compel better answers to the same interrogatories.

The plaintiff cancelled the continuation of her deposition set for March 21, 2007, and then failed to answer questions about her FMLA claim and about her damages when the deposition took place on April 11, 2007. On April 12, 2007, the defendant filed a motion for a protective order on the plaintiff's fourth request for admissions, which totaled 399 items, amended to 375 items. On April 24, 2007, the defendant filed a motion to compel the plaintiff to provide deposition testimony, and asking that the deadline for dispositive motions be continued.  On April 25, 2007, the Court denied the motion to extend the deadline for dispositive motions and ordered the plaintiff to make herself available for her deposition no later than April 30, 2007.

Toys "R" Us filed the instant motion for summary judgment on April 30, 2007. On May 2, 2007, the plaintiff moved to stay her response to the motion for summary judgment until the Court had ruled on the defendant's motion for a protective order on the plaintiff's fourth request for admissions. The plaintiff's motion for a stay was denied on May 8, 2008. Her response was filed on May 17, 2007. The defendant's reply was filed May 29, 2007.

However, on June 6, 2007, the defendant filed an urgent motion to amend the motion for summary judgment, since the same day the defendant filed its May 29, 2007, reply memorandum, the plaintiff filed a petition for bankruptcy.

Pursuant to the Court's Pretrial Order of July 10, 2006, the pretrial stipulation was due June 15, 2007. On June 14, 2007, the plaintiff filed a motion to extend this deadline, citing the outstanding motions for summary judgment and to amend the motion for summary judgment, as well as other litigation commitments which prevented plaintiff's counsel from adding his sections to the pretrial stipulation provided by the defendant. On June 15, the defendant filed its unilateral proposed pretrial stipulation and a response to the plaintiff's motion for a continuance, detailing the plaintiff's repeated unwillingness to meet and confer as required by the Court's Order of July 10, 2006. On June 19, 2007, the Court denied the plaintiff's motion to continue the deadline for the pretrial stipulation. On June 20, 2007, the Court issued a final order of dismissal without prejudice for failure to comply with the Court's Order and failure to cooperate in filing the pretrial stipulation.

The plaintiff appealed the dismissal. By mandate issued May 9, 2008, the Eleventh Circuit Court of Appeals reversed the dismissal. The appellate court found "[a]lthough the record is replete with instances in which Bettis's counsel failed to comply with court orders, and the court warned Bettis that failure to

4

comply could result in dismissal, there is no explicit finding that the conduct was willful and not mere negligence." (DE 135, Mandate p. 9) The decision stated that the Court could have imposed less stringent sanctions such as contempt or disciplinary actions against the attorney.   Since the plaintiff was time-barred from refiling the Title VII and PDA claims, the effect was a dismissal with prejudice. The case was remanded for the Court to consider other sanctions.

The motion for summary judgment is fully briefed and ripe for consideration.    After the remand, both parties filed supplemental authority in support of their memoranda of law.

## II. MATERIAL FACTS NOT IN DISPUTE

The defendant filed a 63-paragraph statement of undisputed facts (DE 40), attached as Appendix A to this report. The plaintiff did not object to any of these facts.   The plaintiff filed a 100-paragraph statement of facts, which she does not describe as "not in dispute." (DE 82).   The defendant generally disputed the plaintiff's facts as unauthenticated or not properly before the Court.[1]   The defendant specifically objects to, as

---

[1] The majority of the plaintiff's facts are taken from her deposition of February 6, 2007.   The defendant filed portions of this deposition in support of its motion for summary judgment.   The plaintiff did not file the rest of this deposition, to which she cites to repeatedly.   Accordingly, the following facts are not supported by evidence on the record: 1, 2, 4 - except for the last sentence, 5, 6 - except for the last sentence, 7, 8, 10, 11, 12, 13, 14, 15,  20, 22, 29 - except the first sentence, 33, 34, 38, 39 - except for the first sentence, 42, 43, 44, 48, 49, 59, 60, 63, 64, 65, 67, 68,  69, 70, 71, 74, 75, 76, 77, 78, 80, 81, 82, 84 - except for the last two sentences, 85, 87 and 94.

inadmissible hearsay, the plaintiff's facts numbered 33, 43, 62 and 86. The Court notes that facts numbered 33 and 43 are not before the Court since they are not supported by evidence on the record. Fact numbered 62 is inadmissible hearsay and will be stricken. Fact number 86 is not clearly inadmissible hearsay since it based on the plaintiff's knowledge. Attached as Appendix B to this report are the plaintiff's remaining facts.[2]

### III.  RECOMMENDATIONS OF LAW

The defendant raises three issues: (1) the plaintiff cannot prove that she was discriminated against based on her gender or pregnancy; (2) the plaintiff cannot prove she was terminated based on her upcoming leave under the Family and Medical Leave Act, and (3) The Florida Civil Rights Act does not cover pregnancy discrimination.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). The evidence must be viewed in the light most favorable to the non-moving party. Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).

---

[2] Facts referring to document "UAT" refer to Docket Entry 82-3, the transcript of David Nelson's testimony from hearing held at the Agency of Workforce Innovation, Office of Appeals.

In opposition to a motion for summary judgment, a party must produce more than a scintilla of evidence on his behalf; he must produce sufficient evidence upon which a reasonable jury could find for him. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986); <u>Hudgens v. Bell Helicopters/Textron</u>, 328 F.3d 1329, 1344-45 (11th Cir. 2003).

<u>A.</u>        <u>Gender/Pregnancy Discrimination</u>

In the absence of direct evidence of discrimination, the plaintiff must establish discrimination under the three step test articulated by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248 (1981). The plaintiff has the initial burden of establishing a prima facie case of discrimination. <u>McDonnell</u>, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce some legitimate, non-discriminatory reason for the adverse employment decision. <u>Burdine</u>, 450 U.S. at 254. This burden is "exceedingly light, since the defendant need only produce, not prove, the non-discriminatory reason." <u>Meeks v. Computer Assoc. Intern.</u>, 15 F.3d 1013, 1019 (11th Cir. 1994). Once the defendant proffers a legitimate non-discriminatory reason for the adverse employment action, the plaintiff must present evidence that the reason is pretextual. The burden of persuasion remains at all times with the plaintiff. <u>Burdine</u>, 450 U.S. at 253.

> Certainly there will be instances where, although the plaintiff has established a prima

7

facie case and set forth sufficient evidence
to reject the defendant's explanation, no
rational factfinder could conclude that the
action was discriminatory.   For instance, an
employer would be entitled to judgment as a
matter of law if the record conclusively
revealed some other nondiscriminatory reason
for the employers's decision, or if the
plaintiff created only a weak issue of fact as
to whether the employer's reason was untrue
and there was abundant and uncontroverted
independence that . . no discrimination had
occurred.

Reeves v. Sanderson Plumbing Products, Inc. 530 U.S. 133, 148, 120

S.Ct. 2097, 2109 (2000).

The plaintiff alleges discrimination in the terms and

conditions of work and in her discharge.[3]  Although the parties

repeatedly lump these claims together in discussing discrimination,

the Court will examine the issues separately.

---

[3] In 1978 the legislature enacted the Pregnancy Discrimination
Act, which added a new definition to the definitions found in Title
VII, 42 U.S.C. § 2000e.  The new definition, found at 42 U.S.C. §
2000e(k) provides that the existing terms "because of sex" or "on
the basis of sex" included "on the basis or pregnancy, childbirth,
or related conditions . . .." Equal Employment Opportunity
Commission v. Atlanta Gas Light Co., 751 F.2d 1188 1189 n. 1 (11th
Cir. 1985). The Title VII legal analysis is identical for both.
Byrd v. Lakeshore Hosp., 30 F.3d 1380, 1383-83 (11th Cir. 1994). The
amended complaint makes claims of discriminatory discharge and
discrimination in the terms and conditions of the plaintiff's
employment under both Title VII and the Pregnancy Discrimination
Act.   While both the motion for summary judgment and the
plaintiff's response to the motion for summary judgment are based
on the issue of pregnancy discrimination, rather than gender
discrimination, a violation of the PDA also is a violation of Title
VII. Byrd at 1381. Accordingly, the discussion of discrimination
under Title VII also applies to the plaintiff's claims under the
Pregnancy Discrimination Act.

<u>1.</u>        <u>Discharge</u>

In step one, the defendant contends that the plaintiff cannot prove a prima facie case of discrimination.  To establish a prima facie case of gender or pregnancy discrimination, the plaintiff must demonstrate that (1) she as a member of a protected class (pregnant, and her employer knew she was pregnant); (2) she was performing her duties satisfactorily; (3) she received an adverse employment action, and (4) similarly situated employees not in the protected class were treated more favorably.  <u>Clay v. Holy Cross Hosp.</u>, 253 F.3d 1000, 1005 (11th Cir. 2001); <u>see also</u>, <u>Armstrong v. Flowers Hosp., Inc.</u>, 33 F.3d 1308, 1314 (11th Cir. 1994).

In step four, the plaintiff must demonstrate "that the conduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained." <u>Nix v. WLCY Radio/Rayhall Communications</u>, 738 F.2d 1181, 1185 (11th Cir. 1984).  When the plaintiff fails to identify similarly-situated employees who were treated differently, she has failed to make a prima facie case and summary judgment properly is granted for the defendant.  <u>Knight v. Baptist Hosp. of Miami, Inc.</u>, 330 F.3d 1313, 1316-19 (11th Cir. 2003).

The defendant asserts that the plaintiff has failed to identify even one similarly-situated employee who was treated differently.  The plaintiff argues that others were not disciplined for violations of the petty case policy.  However, she also was

9

discharged for numerous instances of dishonesty. The plaintiff has not identified any employee accused of dishonesty who was retained. Nor has she challenged the defendant's evidence that numerous male or non-pregnant employees were terminated for dishonesty.

The plaintiff contends she can offer direct evidence of pregnancy discrimination. However, the examples she provides in her memorandum of law are based on a page of her deposition which is not filed with the Court, thus the examples are not supported by evidence on the record.

The plaintiff also asserts that she can prevail under the McDonnell Douglas framework. She argues that since her termination, the defendant has multiplied and "morphed" the reasons for her discharge. She contends that a petty cash violation has not resulted in termination of other employees.

The Court finds that there is no issue of material fact that the defendant's Loss Prevention Manager, Mr. Nelson, conducted a loss prevention audit based on allegations that the plaintiff had discounted the price of a piece of furniture she purchased, in violation of company policy, and had distributed soft drinks to employees without entering the cost in the petty cash book within 24 hours, in violation of company policy. The plaintiff subsequently stated that another employee processed the furniture discount. When asked about the soft drinks during the August 18, 2005, audit, she first looked in the petty cash book for a voucher. When she did not find one, she denied being in the store the

10

morning of August 12, 2005.  Thereafter, Mr. Polselli, the district manager, obtained written statements from several employees that the plaintiff had given them sodas on the morning of August 12. He also obtained a signed statement from the employee whom the plaintiff identified as the person who had processed the discount on the furniture.  The employee wrote that she had set up the computer for the discount, but was called away for a customer and did not process the discount.  On August 29, the plaintiff met with Mr. Polselli for counseling.  The plaintiff presented him with a petty cash slip dated August 11, 2005, and a computer-generated cash register receipt for the purchase of the sodas, which appeared to have been cut off so that it did not include the date and time for the transaction.  Using the transaction number from the cash register receipt, Mr. Nelson researched the computer records and discovered that the receipt had been generated on August 19, 2005, one day after he interviewed her for the loss prevention audit. While violations of the petty cash policy usually are not grounds for dismissal, the plaintiff was discharged for her repeated lack of honesty.

The Court notes that the exhibits supporting this decision were all generated prior to her termination and were not a product of this litigation. The plaintiff has not identified a single similarly-situated employee who was not terminated for dishonesty.  Thus the plaintiff cannot demonstrate  "that the conduct for which [he] was discharged was nearly identical to that

11

engaged in by [an employee outside the protected class] whom [the employer] retained." Nix, 738 F.2d at 1185.[4] When the plaintiff fails to identify any similarly situated employee who was treated differently, summary judgment properly is granted for the defendant. Knight, 330 F.3d at 1318-19. The Court should grant summary judgment for the defendant on the Count II claim for discriminatory discharge under Title VII and the Count IV claim for discriminatory discharge under the PDA.

2.        Failure to Promote

The defendant asserts that its statement of facts not in dispute shows that the plaintiff was treated more favorably after she announced her pregnancy: she was named acting manager of the West Palm Beach store, which she viewed as a positive event; she also was made a district specialist for the computer system.

With regard to her claim of failure to promote, only two of the facts proffered in the plaintiff's memorandum of law are supported by citation to evidence in the record: that District

---

[4] The defendant provided the affidavits naming other employees who were terminated for dishonesty. The plaintiff contends that these must be disregarded since they are not similarly situated. However, she does not meet her burden under Nix to show that non-pregnant similarly-situated employees were not terminated for dishonesty. Nor can she argue that this is not her burden. Even if the Court were to consider the defendant's evidence in support of its decision to terminate her as a non-discriminatory reason presented to rebut her prima facie case of discrimination, she has not provided evidence that the defendant's reason was a pretext by showing that other non-pregnant similarly situated employees were not discharged.

12

Manager Polselli sat in on her evaluation and that managers received a four-week training program.[5]

The Court finds that these two statements do not constitute direct evidence of failure to promote based on pregnancy discrimination.   To qualify as direct evidence the statement must (1) be made by a decision maker; (2) specifically relate to the challenged employment decision, and (3) reveal blatant discriminatory animus.  Chambers v. Walt Disney World Co., 132 F.Supp. 2d 1356, 1364 (M.D.Fla. 2001); See, e.g., Schoenfeld v. Babbit, 168 F.3d 1257, 1266 (11th Cir. 1999), ("in Title VII race discrimination case brought by a white woman who was terminated from her program position, statement by the decision-maker that the program needed a black director was direct evidence of

_____

[5] The other facts offered as direct evidence rely on page 112 of the transcript of the plaintiff's deposition, which was not filed by the defendant. In its reply, the defendant provides page 112 of the deposition. The plaintiff testified that Mr. Polselli told her that he would make her acting manager of the West Palm Beach store, but that "he was just going to throw me to the wolves, which is what he referred to the associates in that store as, and that he was going to provide me with no assistance or training like he did the other store managers."   The plaintiff's response also states that on page 112 Mr. Polselli told her that she would not be promoted to store manager because she was pregnant. The defendant asserts that the plaintiff mischaracterized Mr. Polselli's actual statement.   Referring to page 135 of her deposition, the defendant notes that the plaintiff later testified that she could not remember his exact phrasing.   The Court finds that the statement which the plaintiff could not remember exactly, made her realize "that my pregnancy was the factor for him not promoting me." Nowhere in the deposition does the plaintiff say that Mr. Polselli stated that he would not promote the plaintiff to store manager because she was pregnant.

discrimination." citing, Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).

The defendant contends that the plaintiff cannot show indirect evidence of failure to promote. The defendant's statement of facts not in dispute demonstrates that although two male employees were promoted to store manager in mid-2005, one had far more experience working for the defendant, and, unlike the plaintiff, the other received only positive performance reviews, especially in the area of human relations. The defendant asserts that Mr. Polselli's remarks about the plaintiff's pregnancy and its effect on any promotion, as alleged in the amended complaint constitute nothing more than stray comments. Standifier v. Sonic Williams Motors. LLC, 401 F.Supp.2d 1205, 1216 (N.D. Ala. 2005).

As indirect evidence of a discriminatory failure to promote, the plaintiff cites her performance evaluation after announcing her pregnancy, where she was told she would be held to a different standard; was evaluated on subjective factors, and later was not given a four week training program which was given to a male employee. She notes that "stray comments" made too frequently may constitute language showing some animus. Jones v. Bessemer Carraway Medical Center, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998)(such comments may be used as evidence of pretext).

The defendant's reply contends that while the plaintiff asserts that she should have been promoted to manager, rather than acting manager, her deposition is replete with testimony that she

14

was not familiar with the defendant's procedures and systems. (DE 41-2, pp. 63, 171-172, 175-176, 187, 189-193, 207-209). Moreover, Mr. Polselli's lack of animus is demonstrated by his transferring another pregnant employee to a different store to accommodate her morning sickness. Finally, the defendant notes that although the plaintiff states that she was told she would be promoted in six months after she was hired (which the defendant denies), she worked for the defendant for ten months before she became pregnant, and does not allege that her pregnancy was the cause of her not being promoted at the end of six months.

After a review of the defendant's facts not in dispute, and the plaintiff's statement of facts which are supported by the record, the Court concludes that material facts remain in dispute on the claim of discriminatory failure to promote. The defendant's motion, in the final analysis, is based on the plaintiff's alleged inability to show that the reasons for her lack of promotion were pretext. In light of the stray comments, which the defendant does not deny, but ascribes to concern for the plaintiff rather than animus, this is a matter for a jury to decide. Accordingly, the Court should deny the defendant's motion for summary judgment on the Count I (Title VII) and Count III (PDA) claims of discrimination in the terms and conditions of employment based on gender/pregnancy.

B.          Family and Medical Leave Act

         To establish a claim of interference with the FMLA, the
plaintiff must show that she is entitled to the benefit she claims
and that her employer interfered with or denied that benefit.
O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1286, 1353 (11th
Cir. 2006), cert. denied, 531 U.S. 938 (2000).  However, an
employee has no greater right to benefits and conditions under the
FMLA than those to which the employee would have been entitled had
the employee been continuously employed during the FMLA period.
Id. at 1354.  If an employee can prove that certain benefits under
the FMLA were denied her, the employer has the burden of proving
that the employee would have been treated no differently if the
FMLA leave had not occurred.  Id.   "The FMLA is not a shield to
protect employees from legitimate disciplinary action by their
employers if their performance is lacking in some manner unrelated
to their FMLA leave."  Dillon v. Carlton, 977 F.Supp. 1155, 1160
(M.D.Fla. 1997), aff'd, 161 F.3d 21 (1998). The defendant asserts
that the plaintiff has not demonstrated that her discharge for her
failure to follow company procedures and her dishonesty with regard
to those actions is related to her FMLA request or that the
defendant would not have taken the same actions absent her request
for FMLA leave.

         The plaintiff's response argues that the FMLA statute
does not require the plaintiff to prove that the employer would
have taken the same action absent her FMLA request.  She is not

16

required to show that the denial of FMLA leave was the product of discrimination.  <u>Diaz v. Fort Wayne Foundry Corp.</u>, 131 F.3d 711, 712 (7th Cir. 1997) cited with approval in <u>Connor</u>, 200 F.3d at 1354. She merely is required to demonstrate that she was entitled to a FMLA benefit and it was denied.  The defendant also errs in only discussing her FMLA claim with regard to her discharge.  The defendant fails to discuss the defendant's insistence that she take vacation or personal days when she had  doctor's appointments during her pregnancy.

The defendant's reply asserts, without citation to legal authority, that the plaintiff was not entitled to FMLA leave prior to her discharge because she has provided no evidence that she was unable to work owing her pregnancy while employed by the defendant.

The Court finds that the plaintiff cannot claim violation of her rights under FMLA which occurred during her employment, such as denial of FMLA leave for doctor's appointments.  During that time she did not have a serious medical condition as defined in the statute. <u>Caldwell v. Holland of Texas, Inc.</u>, 208 F.3d 671, 674 (8th Cir. 2000)(discussing 29 C.F.R. § 825.114(a)(2), which defines eligibility for FMLA leave while receiving outpatient treatment from a physician or other health care provider); <u>Hodgens v. General Dynamic Corp.</u>, 144 F.3d 151, 163-165 (1st Cir. 1998).  The plaintiff was not receiving outpatient treatment which was necessary to allow her to continue working during her pregnancy.  Instead, she was going to doctor's appointments to monitor the progress of her

17

pregnancy and its effects on her diabetes.  Accordingly, the Court should grant summary judgment for the defendant on the FMLA claim that it interfered with FMLA leave for the plaintiff's doctor's appointments.

With regard to the plaintiff's claim that the defendant violated the FMLA by discharging her two weeks before her baby was due, the plaintiff is only required to establish that she was entitled to the benefit and that the employer interfered with or denied that benefit. O'Connor, 200 F.3d at 1353, citing Diaz. However, if the defendant can show that the plaintiff's termination was the result of a business decision unrelated to the plaintiff's request for FMLA leave, the employer has not violated the FMLA. Id. at 1354.  In the instant case, there are no material facts at issue that  the defendant's decision to discharge the plaintiff clearly was a business decision not to employ a person who violated company policies then engaged in repeated dishonesty about the matters. The Court should grant summary judgment for the defendant on the FMLA claim that the defendant interfered with the plaintiff's right to FMLA leave after the birth of her child.

Since the plaintiff cannot prevail on either prong of her FMLA claim, the Court should grant summary judgment for the defendant on the Count VI claim of interference with the plaintiff's exercise of her right to FMLA leave.

C.          Florida Civil Rights Act

The defendant contends that the claims filed pursuant to the Florida Civil Rights Act (hereinafter "FCRA") must fail since the Act does not cover pregnancy discrimination.  Both parties cite O'Laughlin v. Pinchback, 579 So.2d 788, 791 (Fla. 1ˢᵗ DCA 1991),

> Under a *Guerra* pre-emption analysis, Florida's law [the Florida Human Rights Act] stands as an obstacle to the accomplishment and execution of the full proposes and objective of Congress by not recognizing that discrimination against pregnant employees is sex-based discrimination.  The protections afforded by Title VII and the PDA cannot be eroded by the Florida Act which does not contain a similar provision.  Thus, we conclude that the Florida Human Rights Act, specifically Section 760.10, Florida Statutes, is pre-empted by Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e-2 to the extent that Florida's law offers less protection to its citizens than does the corresponding federal law.

The plaintiff points out that when a federal court interprets a state statute, if there is no opinion by the state supreme court, the federal court is bound by state appellate court decisions, even if the federal court disagrees with the state court's reasoning or decision.  Studstill v. Borg Warner Leasing, 806 F.2d 1005, 1007 (11ᵗʰ Cir. 1986).  The plaintiff asserts that this Court must be bound by O'Laughlin, which holds that the state statute must be read to include pregnancy discrimination because pregnancy is a protected class under Title VII.

The defendant contends that the O'Laughlin court found that the state statute did not afford protection against pregnancy

19

discrimination, and thus was preempted by Title VII.  Moreover in
1992, after O'Laughlin was decided, and after the federal Pregnancy
Discrimination Act was enacted, the Florida legislature amended the
Florida Human Rights Act, which was renamed the Florida Civil
Rights Act, and did not add pregnancy discrimination to the FCRA.
The  defendant  argues  that  the  failure  to  add  pregnancy
discrimination  to  the  FCRA  is  a  clear  expression  that  the
legislature did not intend to provide a claim for pregnancy-based
discrimination in the FCRA. Gulfstream Park Racing Ass'n, Inc. v.
Dept. of Bus. Regulation, 441 So.2d 627, 628 (Fla. 1983)("[W]hen
the  legislature  reenacts  a  statute  which  has  a  judicial
construction placed upon it, it is presumed that the legislature is
aware of the construction and intends to adopt it, absent a clear
expression to the contrary").  The defendant also cites several
federal district court decisions which hold that the legislature's
failure to include pregnancy discrimination in the FCRA makes the
claim unavailable under the FCRA.  Westrich v. Diocese of St.
Petersburg, Inc., 2006 U.S.Dist.Lexis 27624 (M.D.Fla. May 9, 2006);
Swiney v. Lazy Days R.V.Ctr., 1997 U.S.Dist. Lexis 14683 (M.D.Fla.
Aug 1, 2000).

        The Court notes that the Florida Supreme Court cites
O'Laughlin to support the ruling that "if a state law is patterned
after a federal law on the same subject, the Florida law will be
accorded the same construction as given to the federal act in
federal courts." State of Florida v. Jackson, 650 So.2d 24, 27

(Fla. 1995). State courts continue to cite <u>O'Laughlin</u> as holding that the FCRA includes claims for pregnancy discrimination. <u>Carsillo v. City of Lake Worth</u>, 2008 WL 5070282 (Fla. 4th DCA Dec. 3, 2008)(finding that the Florida Human Rights Act ban on sex discrimination included pregnancy discrimination; thus, pregnancy discrimination did not have to be added when the statute was revised as the FCRA in 1992);[6] <u>Carter v. Health Management Assoc.</u>, 989 So.2d 1258, 1265-55 (Fla. 2d DCA 2008)(after considering (1) <u>O'Laughlin</u>, (2) federal district court opinions which are split on the issue of whether pregnancy discrimination states a claim under the FCRA, and (3) noting that the Florida Supreme Court has not ruled on the issue of pregnancy discrimination and the FCRA, the <u>Carter</u> court, without deciding whether the FCRA included pregnancy discrimination, found that it was reasonable for the plaintiff to believe that a pregnancy claim was covered under the FCRA, and refused to dismiss her complaint for retaliation). The undersigned could find no published Florida court case which held that the FCRA does not include pregnancy discrimination. Accordingly, the Court finds that the FCRA includes claims for pregnancy discrimination.

---

[6] This case was originally filed in state court, and was removed to federal court, citing <u>O'Laughlin</u> for the proposition that Title VII preempted the FCRA claim. The federal court remanded the case to state court, finding that <u>O'Laughlin</u> "construed the Florida Civil Rights Act to provide the same protection to pregnant women as would its Federal counterpart." <u>Casillo v. City of Lake Worth,</u> Case No. 04-81198-Civ-DIMITROULEAS, Docket Entry 7, 2005 U.S.Dist. Lexis 11805 *2 (February 9, 2005).

In a footnote in its reply memorandum, the defendant asserts, without citation to legal authority, that if the Court finds that the FCRA does include pregnancy discrimination, summary judgment is still proper for the defendant because the plaintiff cannot prove all of the elements of pregnancy-based discrimination.

In light of <u>Jackson</u>, 650 So.2d at 27, the FCRA should be construed the same as Title VII and the Court should grant summary judgment for the defendant on the Count VII claim of discriminatory discharge in violation of the FCRA. For the same reason, the Court should deny the defendant's motion for summary judgment on the Count V FCRA claim of discriminatory failure to promote.

### IV. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED as follows:

1. That the Court GRANT the defendant's motion for summary judgment on Counts II, IV, VI and VII.

2. That the Court DENY the defendant's motion for summary judgment on Counts I, III and V.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. <u>LoConte v. Dugger</u>, 847

F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); <u>RTC</u>
<u>v. Hallmark Builders, Inc.</u> , 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED in Fort Lauderdale, Florida, this 17th day of December, 2008.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to: