UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80334-CIV-ZLOCH

RENEE BETTIS,

        Plaintiff,

                                        **O R D E R**

vs.

TOYS "R" US,

        Defendant.
_____/

CASE NO. 08-60565-CIV-ZLOCH

SONYA GOSSARD,

        Plaintiff,

vs.

JP MORGAN CHASE & CO.,

        Defendant.
_____/

CASE NO. 06-20418-CIV-ZLOCH

RAMON SABATIER,

        Plaintiff,

vs.

SUNTRUST BANK,

        Defendant.
_____/

CASE NO. 09-60259-CIV-ZLOCH

LAISNER PAUL,

        Plaintiff,

vs.

D & B TILE OF HIALEAH, INC.,

        Defendant.
_____/

THIS MATTER is before the Court upon the Report and
Recommendation (DE 205) filed by United States Magistrate Judge

Robin S. Rosenbaum.  Plaintiffs have filed objections (DE 217) to the Report and Recommendation.[1]  The Court has conducted a <u>de</u> <u>novo</u> review of the entire record of each of the above-styled causes and is otherwise fully advised in the premises.

A brief procedural history is helpful, if not necessary, to understand why the Court is adopting Magistrate Judge Rosenbaum's Report and overruling Plaintiffs' objections to it. A complete thirty-page procedural and factual history of these cases is set forth in the Report (DE 205), and this brief background is only offered to frame the supplemental comments provided here and to aid any reviewing court in understanding those points.

Plaintiff Ramon Sabatier filed suit against his former employer Suntrust Bank, alleging that it retaliated against him for making a claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201, <u>et</u> <u>seq.</u>  At the summary judgment stage, in that case, the Court found that no genuine issues of material fact remained for the jury to decide and entered judgment for Suntrust. While Defendant Suntrust Bank's Motion For Summary Judgment was pending, Plaintiff filed a Motion To Recuse. Case No. 06-20418-CIV-ZLOCH,

---

[1] An identical Objection has been filed in each of the above-styled causes. <u>Renee Bettis v. Toys "R" Us, Inc.</u>, Case No. 06-80334-CIV-ZLOCH (DE 217); <u>Gossard v. JP Morgan Chase & Co.</u>, Case No. 08-60565-CIV-ZLOCH (DE 109); <u>Sabatier v. Suntrust Bank</u>, Case No. 06-20418-CIV-ZLOCH (DE 118); <u>Paul v. D & B Tile of Hialeah, Inc.</u>, Case No. 09-60259-CIV-ZLOCH (DE 41). For the sake of clarity, and unless otherwise noted, the Filings referred to herein will correspond with docket entries in <u>Renee Bettis v. Toys "R" Us, Inc.</u>, Case No. 06-80334-CIV-ZLOCH.

(DE 59). In it, he claimed that because the Court had handed down some rulings adverse to the Plaintiff in Bettis v. Toys "R" Us, who was represented by the same attorney, the Court was prejudiced against that attorney, Mr. Loring Spolter, Esq., and all of his clients. The alleged root of this illicit prejudice was the undersigned's "extreme religious and political beliefs," about which Mr. Spolter conjectured greatly. Id. p. 1. For 110 pages of court filings, Mr. Spolter set out how being Catholic, having law clerks educated at a Catholic law school, and being associated with the Federalist Society led to the conclusion that I hold personal animus against Renee Bettis and her attorney. The Court denied the Motion To Recuse as baseless, and the case was appealed. The Eleventh Circuit affirmed the granting of summary judgment and rejected Sabatier's argument that the undersigned should recuse. Sabatier v. Suntrust Bank, 301 Fed. Appx. 913 (11th Cir. 2008); Case No. 06-20418-CIV-ZLOCH, DE 80 (Opinion of the Eleventh Circuit). It stated: "We also see no abuse of discretion in the district court's decision to deny Sabatier's motion to recuse." Id. p. 6.

In a separate case, Renee Bettis sued her former employer Toys "R" Us for employment discrimination; that case has proven to be the true epicenter of Mr. Spolter's spate of scurrilous allegations and rampant conjecture. After Bettis, through her Counsel, repeatedly failed to comply with the Court's Orders and made affirmative misrepresentations in her filings, the Court dismissed

3

her suit, without prejudice. DE 122 (Final Order of Dismissal); DE 119 (Order denying extension of time because Plaintiff made affirmative misrepresentations in her Motion); DE 115, Ex. A (Plaintiff's misrepresentations). On appeal she challenged the sanction of dismissal and also raised the issue of the undersigned's recusal from her case, citing again, my Catholic faith, some of my law clerks' education, and my connections to the Federalist Society. Notably, the appeal looked past the fact that her attorney willfully failed to comply with the Court's Orders as the reason for dismissal. In its opinion, the Eleventh Circuit held that lesser sanctions than dismissal should be imposed against Bettis, and it also rejected Bettis's argument concerning recusal and alleged bias. The panel noted that "Bettis has established no bias——or even an appearance of bias. Moreover, a review of the record establishes that the court was even-handed in resolving the motions before it." Bettis v. Toys "R" Us, 273 Fed. Appx. 814, 820 (11th Cir. 2008); Case No. 06-80334-CIV-ZLOCH, DE 135, p. 14 (Opinion of the Eleventh Circuit) (emphasis added). The Eleventh Circuit went on to note that "[Bettis] is attempting to create an appearance of impropriety to further her request for recusal and reassignment. There is no appearance of impropriety." Id. (emphasis added). The case was then remanded to consider lesser sanctions, and summary judgment was eventually granted for Toys "R" Us. DE Nos. 153 & 154.

   While both the Sabatier and Bettis cases were on appeal,

4

Plaintiff Sonya Gossard sued her former employer JP Morgan and the case was assigned to me.  She claimed that she was discriminated against by JP Morgan on a variety of bases. After Defendant moved for summary judgment, the Court found that no genuine issues of material fact existed for a jury to determine, and the Court entered Judgment in favor of Defendant. See Gossard v. JP Morgan Chase & Co., Case No. 08-60565-CIV-ZLOCH, DE Nos. 59 & 60.

After Judgment was entered in Bettis and Gossard, and six months after the Mandate was handed down in Sabatier, Plaintiffs, all represented by Mr. Spolter, filed Motions For Reconsideration and Recusal in the above-styled causes, which again raised as a basis for recusal my Catholic faith, some of my law clerks' education, and my connections to the Federalist Society. DE 156.[2] This time the Motions had an added twist: Plaintiff now claimed that I had rigged the blind, random case assignment system for cases filed in the Southern District of Florida, so that I would receive a disproportionate number of Plaintiff's cases in order to dismiss them unjustly. See DE 156, pp. 13-20. An almost identical motion was filed in each of the above-styled causes. While the Motions were pending, and despite the prohibitions of Local Rule 77.2.A.7.E, Mr. Spolter sat for an interview with a local tabloid to showcase his accusations. See John Pacenti, *Lawyer Say*

---

[2] The Motions in Bettis and Gossard also raise grounds for reconsideration of the judgments entered therein.  They are not germane to the proceedings covered by this Order.

*Statistics Prove He's Been Treated Unfairly* <u>Daily Business Review</u>, June 8, 2009, at A1. In the Motions, Mr. Spolter also sought a public airing of his accusations, presumably other than the one the tabloid provided. <u>Id.</u> p. 21. And the Court obliged. DE 173.

In an effort "to fully develop the record in these cases, to ensure the Parties' and the public's confidence in an honest and independent judiciary, and to determine the truth of the matters at issue," I referred the matter to United States Magistrate Judge Robin S. Rosenbaum for an evidentiary hearing. DE 173, p. 2. Additionally, I directed that all Clerk's office personnel who handled the assignment of Mr. Spolter's cases be made available for Plaintiffs to examine and that Plaintiffs were free to call whatever witnesses Mr. Spolter felt would be necessary to substantiate his allegations.  The only exception was me; pursuant to Federal Rule of Evidence 605, I cannot be called upon as a witness.

In the Order of Referral, the Court directed Magistrate Judge Rosenbaum to make specific findings, aside from any other findings she found it necessary to make, concerning the following questions:

> a. whether Plaintiffs' Motions cited above were presented for an improper purpose;
> b. whether a reasonable attorney in like circumstances could believe Plaintiffs' claims that the undersigned has manipulated the blind, random case assignment system in the Southern District of Florida were factually and legally justified;
> c. whether the undersigned has in any way manipulated the case assignment system in the Southern District of

6

> Florida generally;
> d. whether the undersigned has in any way manipulated the case assignment system in the Southern District of Florida specifically concerning cases filed by Plaintiffs' Counsel Mr. Loring Spolter, Esq.; and
> e. whether the undersigned has ever directed any individual in the Clerk's office to manipulate the case assignment system generally or with respect to cases filed by Mr. Spolter.

DE 173, pp. 2-3. After holding two days of hearings, Magistrate Judge Rosenbaum issued a 92-page Report and Recommendation. DE 205. As to points three through five, she found that there was no evidence whatsoever that the case assignment system in this District was manipulated by the undersigned or any other person. DE 205, p. 59. Nothing can be added to points three through five. A thorough review of the transcript establishes the intricacies of the computerized case assignment system, and why it borders on the impossible for anyone to manipulate it. In addition, Magistrate Judge Rosenbaum found, and the record establishes, that Plaintiff's expert, Professor Dragan Radulovic, Ph.D., relied on data and assumptions about the case assignment system that were both supplied by Mr. Spolter and wholly inaccurate. These false assumptions could have been easily discovered by anyone who read the Local Rules and Internal Operating Procedures of this District. And this information was particularly available to Mr. Spolter, who is a member of the Southern District Bar and was notified of the Internal Operating Procedures and certain preferences in the assignment of cases by a letter dated March 6, 2009, sent to him by the Clerk of the Court in response to his Freedom Of Information

Act ("FOIA") request. Clerk's Exhibit 9.[3] Even a cursory review of the Local Rules and the Internal Operating Procedures, which were highlighted to Mr. Spolter in the letter from the Clerk of the Court, shows that the case assignment system is not a matter of Judges getting cases as if they were drawn from a hat. That simplistic and mendacious assumption was at the heart of Mr. Spolter's analysis.

After reviewing the evidence and Plaintiffs' Motions To Recuse, Magistrate Judge Rosenbaum found that they were presented for an improper purpose. Id. p. 91. She also found that "the record in this case precludes a finding that a reasonable attorney in like circumstances to that of Mr. Spolter could believe that Plaintiffs' claims that a reasonable person could conclude that Judge Zloch manipulated the blind, random case assignment system in the Southern District of Florida were factually justified." DE 205, p. 71. And that because "nothing in the record supports the idea that Judge Zloch either manipulated or caused the manipulation of the District's case-assignment system. . . . Mr. Spolter's recusal motions are, consequently, not legally justified." Id. p. 75. These findings and conclusions are sound and will not be disturbed. The additional comments herein are merely offered in support of Judge Rosenbaum's findings.

_____

[3]The citation to Clerk's Exhibits and Plaintiffs' Exhibits are, unless otherwise specifically referenced, those that were entered into evidence at the Evidentiary Hearing held before Magistrate Judge Rosenbaum.

I.

Much of Judge Rosenbaum's ultimate finding that the Motions were not factually justified at the time they were filed was based on the publically available information about the case assignment system and the letter from the Clerk of the Court Mr. Spolter received concerning it. She states:

> While Mr. Spolter could not have uncovered all of the details of the manner in which the District's case-assignment system works prior to filing his recusal motions, a "reasonably competent attorney" in Mr. Spolter's place would have known enough to recognize that the District's case-assignment program does not operate on a "100%" pure blind, random system. Consequently, a "reasonably competent attorney" would not have instructed an expert to conduct a study based on that incorrect assumption. By engaging in precisely that conduct, however, Mr. Spolter effectively designed the study to be useless. He compounded his error by basing his contentions that a reasonable person could believe that the District's case-assignment system was "rigged" solely on the expert's conclusion that Mr. Spolter's cases were assigned to Judge Zloch in a manner statistically inconsistent with the operation of a system that Mr. Spolter should have known for a fact to be nonexistent in the Southern District of Florida.

DE 205, p. 71. Judge Rosenbaum is completely correct: the Local Rules and the Internal Operating Procedures make clear that cases are not assigned on a pure blind, random system.

But there is another level of fault in Spolter's behavior beyond his willful ignorance of the Rules and Operating Procedures of this District and the fact that the information he supplied his Expert with was mendacious. If Mr. Spolter truly believed, as he has stated, that the system was rigged and that he had to blow the whistle, then he went about it completely the wrong way. Indeed,

9

the way he pursued his claim reeks of a lawyer operating in bad faith.

Mr. Spolter may not have been able to uncover all of the logarithms and assignment-system nuances that were explained at the hearing by reviewing the Local Rules, the Internal Operating Procedures, and Mr. Larimore's letter to him. But had he professionally and personally approached me, the Chief Judge of this District, or the Clerk with these concerns, then supplemental information would have been made available to him. These were not petty allegations that Mr. Spolter made. They cut at the heart of the integrity of the Federal Judiciary: they accuse an Article III judge of a crime. 18 U.S.C. §§ 1503, 1509, 2071, 2076. (various crimes that involve tampering with Clerk's Office personnel, reports, and documents).

Before broadcasting these concerns to the world, prudence and good sense dictate that they should have first been taken to me, and in the event my response was unsatisfactory, then to the Chief Judge and the Clerk of the Court. If both of those options proved unsatisfactory, then the matter should be taken to the Chief Judge of the Circuit with a formal complaint. In that way, the truth would have been easily ascertained. 28 U.S.C. §§ 351-368 (2006) (prescribing the procedure for investigation of judicial misconduct); see also The Rules For Judicial Conduct And Judicial Disability Rules 6 & 7. If the error had been on Mr. Spolter and his assumptions, then no harm, no foul. The matter would have been

cleared up without besmirching anyone's name publically and incurring thousands of dollars in attorney's fees. And if, on the other hand, Mr. Spolter had been correct that there were some shenanigans afoot, then the Chief Judge of this District or Circuit would surely have quickly investigated and remedied it. <u>Id.</u> However, filing the subject Motions For Recusal and running to the press with a cockamamie conspiracy theory speaks to Mr. Spolter's ill-motive far more than a search for the truth and the best interests of his clients.

On this point, Mr. Spolter could argue that his formal FOIA request sent in February of 2009 satisfies the burden of decency placed on him as a human being and Officer of this Court; but the request was ridiculous. On February 23, 2009, Mr. Spolter sent a FOIA request to me, Chief Judge Moreno, and Steven Larimore, Esq., the Clerk of the Court. He requested:

> 1.  Case numbers of all civil cases first assigned to Judge William Zloch during calendar years 2005, 2006, 2007, 2008 and 2009.
> 2.  All Notices of Ripeness (pertaining to pending rulings) and/or Pleadings of Ripeness (pertaining to pending rulings) filed with the Clerk of the Court during calendar years 2005, 2006, 2007, 2008 and 2009 in civil court cases presided over by Judge William Zloch.
> 3.  All written policies and/or rules and/or guidelines in effect during calendar years 2005, 2006, 2007, 2008 and 2009 pertaining to assignment of judges on some and/or newly filed cases.
> 4.  All written communications from any and all judges dated during calendar years 2005, 2006, 2007, 2008 and 2009 pertaining to assignment of judges on some and/or all newly filed cases.
> 5.  All written communications from the Clerk of the Court dated during calendar years 2005, 2006, 2007, 2008 and 2009 pertaining to assignment of judges on some

and/or all newly filed cases.
6.  All written policies and/or rules and/or guidelines
in effect during calendar years 2005, 2006, 2007, 2008
and 2009 pertaining to assignment of judges on some
and/or all newly filed cases for which county of
occurrence effects and/or relates to said assignments(s).
7.  All written communications from any and all judges
dated during calendar years 2005, 2006, 2007, 2008 and
2009 pertaining to assignment of judges on some and/or
all newly filed cases for which county of occurrence
effects and/or relates to said assignments(s) [sic].
8.  All written communications from the Clerk of the
Court dated during calendar years 2005, 2006, 2007, 2008
and 2009 pertaining to assignment of judges on some
and/or all newly filed cases for which county of
occurrence effects and/or relates to said assignments(s)
[sic].
9.  Any and all documents drafted and or generated during
calendar years 2005, 2006, 2007, 2008 and 2009 stating
and/or reflecting the number of civil cases assigned to
specific judges.
10.  Any and all documents drafted and or generated
during calendar years 2005, 2006, 2007, 2008 and 2009
stating and/or reflecting the number of cases based on
civil cause(s) of action assigned to specific judges,
regardless whether [sic] cases were newly filed and/or
previously filed.
11.  For all judicial clerks who have reported and/or
currently report to Judge William Zloch during calendar
years 2000 through present, provide the following:
     a. Documents indicating the names of all such
clerks;
     b. Documents indicating the law schools attended by
all such clerks;
     c. All documents submitted by said clerks for
purposes of obtaining employment.
12.  All documents Judge William Zloch has submitted to
local and/or Washington, D.C. governmental addresses
pertaining to actual and/or potential conflicts of
interests during calendar years 2000 through present.
13.  All documents Judge William Zloch has submitted to
local governmental offices and/or Washington, D.C.
governmental addresses or governmental addresses
elsewhere pertaining to functions, programs, seminars
and/or continuing education programs attended during
calendar years 2000 through present.
14.  All documents Judge William Zloch has submitted to
local governmental offices and/or governmental offices in
Washington, D.C. or elsewhere pertaining to functions,

12

programs, seminars and/or continuing education programs attended by Judge Zloch during calendar years 2000 through present which were sponsored, organized, hosted, established or otherwise directed by any entity not a part of the United States Government.

15.  All documents Judge William Zloch has submitted to local governmental offices and/or governmental offices in Washington, D.C. or elsewhere pertaining to functions, programs, seminars and/or continuing education programs attended by Judge Zloch during calendar years 2000 through present which were sponsored, organized, hosted, established or otherwise directed by any entity not a part of the United States Government.

16.   All documents, including but not limited to directives, memos, memorandums, policies, guidelines and/or instructions indicating that any lawsuit filed by Attorney Loring Spolter should be assigned to any specific judge and/or should be treated for judge assignment purposes in a manner other than how cases are generally handled and/or assigned.

17.  Other than lawsuits or other pleadings filed by litigants or orders which the Court has actually provided copies via PACER to Loring Spolter, provide all documents, including but not limited to directives, memos, memorandums, policies, guidelines and/or instructions mentioning, pertaining to, or otherwise naming or specifically relating/pertaining to attorney Loring Spolter.

18.  Any and all documents, including but not limited to directives, memos, memorandums, policies, guidelines and/or instructions indicating a reason, basis, opportunity and/or other purpose to re-submit or delete to/from the Southern District of Florida website information that does not list the name of the law school law clerks(s) [sic] attended.

19.  Any and all documents, including but not limited to directives, memos, memorandums, policies, guidelines and/or instructions indicating a reason, basis, opportunity and/or other purpose to re-submit or delete to/from the Southern District of Florida United States District Court website information that does not list the name of the law school law clerks(s) [sic] attended.

20.   Any and documents [sic] which request, direct or instruct that information be deleted from the website of the Southern District of Florida the names of law schools which were attended by Judge Zloch's legal/law clerks.

21.  Any and all documents indicating the date for which the names of law schools which were attended by Judge Zloch's legal/law clerks were deleted and/or otherwise

removed from the website of the Southern District of
Florida United States Court.
22.  All documents stating the policy/each policy from
year 2004 through present as to which documents and/or
materials within the possession of the Clerk of the
Court, The [sic] office/chambers of the Chief Judge
and/or of Judge Zloch which do fall within the
jurisdiction of the Freedom of Information Act.
23.  All documents stating the policy/each policy from
year 2004 through present as to which documents and/or
materials within the possession of the Clerk of the
Court, The [sic] office/chambers of the Chief Judge
and/or of Judge Zloch which are exempt from the
jurisdiction of the Freedom of Information Act.
24. All computer programs and/or similar formulas which
were in your possession at any point in time during
calendar years 2005, 2006, 2007, 2008 and 2009 relating
and/or pertaining to assignment to judges of newly filed
civil cases on any basis other than 100% randomness.
25.  Pertaining to computer programs and/or similar
formulas which were in your possession at any point in
time during calendar years 2005, 2006, 2007, 2008 and
2009 relating and/or pertaining to assignment to judges
of newly filed civil cases on any basis other than 100%
randomness, produce all documents relating to which
individual(s) requested the purchase, obtaining and/or
use of same.
26.  Pertaining to computer programs and/or similar
formulas which were in your possession at any point in
time during calendar years 2005, 2006, 2007, 2008 and
2009 relating and/or pertaining to assignment to judges
of newly filed civil cases on any basis other than 100%
randomness, produce all documents relating to which
individual(s) authorized the purchase, obtaining and/or
use of same.
27.   Pertaining to computer programs and/or similar
formulas which were in your possession at any point in
time during calendar years 2005, 2006, 2007, 2008 and
2009 relating and/or pertaining to assignment to judges
of newly filed civil cases on any basis other than 100%
randomness, produce all documents relating to the costs
and/or expenses in dollar and/or hours-time for obtaining
and completed installation of same.

Clerk's Exhibit 9. This litany of demands is not a legitimate

attempt to understand why I have been assigned more of Mr.

Spolter's cases than other Judges; it is harassment.

14

To come to me or the Chief Judge of this District or the Chief of this Circuit to discover how the case assignment system works, Mr. Spolter only had to do so in a manner that gave weight to the seriousness of his allegations and his honest concern for his clients and cases. But that is not what Mr. Spolter did. Instead, he sent that insipid and inane FOIA request, even though the Judiciary is exempt from its requirements. 5 U.S.C. §§ 551(1)(B), 552(f). The FOIA request did not state that Mr. Spolter was concerned that more of his cases are being assigned to me than the case assignment system should provide. That FOIA request is not a legitimate attempt to understand the case assignment system, and it does not qualify as a serious probe of the truth. What it does is reveal Mr. Spolter's true intention: harassment of the Judiciary with a fishing expedition. Requests in that form belie an honest search for the truth and reflect the bad faith that motivated and permeated Mr. Spolter's Motions.

## II.

On page 75 of the Report and Recommendation Magistrate Judge Rosenbaum found that regarding the factual record Mr. Spolter was aware of at the time he filed his motion, "'an objective disinterested lay observer, fully informed of the facts underlying [Mr. Spolter's hypothesis that Judge Zloch had done so] [could not] entertain a significant doubt' about Judge Zloch's impartiality, and Mr. Spolter's recusal motions are, consequently, not legally justified." DE 205, p. 75. There is no question that Mr. Spolter

15

provided his Expert with a knowingly fraudulent set of data. But this fact is not the end of the analysis: Mr. Spolter also included in his Motion, again, that my faith, some of my law clerks' education, and my association with the Federalist Society was a basis for recusal. DE 156-2, pp. 14-16. Not only was there no statistically valid reason to claim that the case assignment system was rigged and nothing but blind, malicious conjecture suggested that I was involved in such a scheme, there was no legitimate factual or legal reason for Mr. Spolter to re-argue the points raised in his first Motions For Recusal. The fact that they are amplified by attacks upon the Honorable Daniel A. Manion, Circuit Judge for the United States Court of Appeals for the Seventh Circuit and other baseless conjecture concerning my previous service on the Financial Disclosure Committee does not change the fact that these points are again raised by Mr. Spolter as providing a basis for recusal.

As noted above, in <u>Sabatier</u>, Mr. Spolter previously raised those issues as providing a basis for recusal, and I found that he did not establish grounds for recusal from the case. Case No. 06-20418-CIV-ZLOCH, DE 61. The same issue was then raised on appeal in both <u>Sabatier</u> and <u>Bettis</u>, and, by two separate panels, the Eleventh Circuit found the argument meritless. <u>Sabatier</u>, 301 Fed. Appx. at 915; <u>Bettis</u>, 273 Fed. Appx. at 820. To continue to argue this point is to ignore the authority of this Court and the Eleventh Circuit. The issue has been well-settled in federal court: a Judges's faith

is not a basis for recusal. Oliver v. Freeman, 507 F. Supp. 706, 729 (D. Idaho 1981); see also Macdraw, Inc. v. CIT Group Equip. Fin., Inc., 994 F. Supp. 447 (S.D.N.Y. 1997), aff'd 138 F.3d 33, 37 (2d Cir. 1998) ("Courts have repeatedly held that matters such as race or ethnicity are improper bases for challenging a judge's impartiality."). And it is the law of the case in Bettis and Sabatier that those points do not provide a basis for me to recuse. If Mr. Spolter felt that the Court of Appeals rulings were in error then he should have sought rehearing, rehearing en banc, or petition for a writ of certiorari from the Supreme Court. But ignoring a reviewing court's determination by raising an already-decided issue is, to say the very least, improper. DeSisto College, Inc. v. Line, 888 F.2d 755, 757 (11th Cir. 1989).

The Court is at a loss in trying to imagine a similar case where a party has raised an argument for recusal in the District Court that is rejected; then it is raised in the Court of Appeals, and the District Court is affirmed; the Party does not seek an en banc ruling or seek certiorari review; instead, months after the Mandate is handed down, Counsel raises the recusal issue again in the District Court where nothing remains pending. That is exactly what has happened here. When Mr. Spolter raises the argument for recusal on the basis of my faith, some of my law clerks' education, and my affiliation with the Federalist Society again, all he is doing is restating those points more emphatically, using more exclamation points, and ramping up the accusations. These issues

17

have been raised, and they have been decided; they cannot be raised by motion again. Id.; In re Evergreen Security, Ltd., __ F.3d ___, 2009 WL 1622386, at *13-14 (11th Cir. June 11, 2009). Thus, the Court concurs with Judge Rosenbaum's finding that there is no legal basis for Mr. Spolter to believe that he may re-argue those points in his Motions to Recuse.

III.

Magistrate Judge Rosenbaum analyzed the recent Eleventh Circuit case In re Evergreen very closely, and she applied the six factors discussed there to this case: one, making assumptions and jumping to conclusions; two, delay in having a hearing; three, ignoring decisions of higher courts; four, continuing to pursue arguments denied by the court on multiple occasions; five, making public allegations; sixth, making allegations fantastic in nature. Looking at the second factor of "delay," Magistrate Judge Rosenbaum looked at Mr. Spolter's behavior surrounding the recusal motions, and stated that "the Court does not find that Mr. Spolter stalled the recusal proceedings." DE 205, p. 87. Much of the language in In re Evergreen suggests that the inquiry for sanctions in that case was limited to the actual recusal motions and the behavior that surrounded and accompanied their filing alone. In re Evergreen, 2009 WL 1622386, at *13-14.

In the Report, Magistrate Judge Rosenbaum analyzed Mr. Spolter's behavior concerning the Evidentiary Hearing alone. And while this narrow view of Spolter's behavior comports with In re

18

_Evergreen_'s language, Spolter's filings suggest untoward delay in another form. But before addressing the recusal motions in the larger scheme of Mr. Spolter's tendency to habitually delay and needlessly prolong issues, the Court pauses to address certain elements that were disturbing in Spolter's behavior that Magistrate Judge Rosenbaum did not discuss.

A.

It is clear that Mr. Spolter did not continually request extensions of the Evidentiary Hearings. But in analyzing Mr. Spolter's behavior, it is essential to remember that before any motion can be filed in Federal Court the movant's "factual contentions [must] have evidentiary support or, if specifically so identified, be likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). This is the bare minimum; indeed, it is a necessary condition to filing any motion. Consequently, once a motion is filed, the Court should be able to immediately call upon Mr. Spolter and ask that he present sufficient evidence to establish that his filing comports with Rule 11(b)(3). That is the normative standard that honest attorneys should hold their filings to. If there is sufficient evidence to file such a motion, than its production should be of no consequence.

Mr. Spolter may not have stepped over the line with his delays and the recusal motions, but he did toe the line. He responded to the Order of Referral with an initial request to continue the

hearing, which Magistrate Judge Rosenbaum granted. See DE 177
(Spolter's Motion); DE 180 (Order granting Spolter's Motion).  He
also filed a witness list for the hearing after the deadline for
doing so. This list included me and Chief Judge Moreno, DE 184,
despite the fact that the Order of Referral stated that the
undersigned could not be called to testify. DE 172; Fed. R. Evid.
605. And there was no basis to call Chief Judge Moreno, other than
Spolter's hope that the hearing would be, like his FOIA request, a
fishing expedition. Magistrate Judge Rosenbaum struck both from the
witness list. DE 185. The Evidentiary Hearing was meant for Mr.
Spolter to establish in the Record the factual basis for his
filings and give a public airing to the evidence that he had in
support of them, all of which he should have been able to do ten
seconds after filing the Motions.

     The day before the Evidentiary Hearing, Mr. Spolter filed a
Response And Objection Of Counsel For All Named Plaintiffs (DE
188); in it he sought to vacate the Order of Referral and again
sought to refer the Motions To Recuse to Chief Judge Moreno.  To
avoid any delay on Mr. Spolter's part at the hearing, the Motion
was denied that evening. DE 194. As discussed in greater detail
elsewhere, nothing demands that a frivolous motion to recuse be
referred to the Chief Judge. In re Evergreen, 2009 WL 1622386, at
*18; see also DE 194 (Order denying Motion). But despite my ruling
on the issue, this same objection was again raised by Mr. Spolter
at the beginning of the hearing. DE 211, Hearing Transcript pp. 2-

9.

At the hearing Mr. Spolter had no evidence to present: his Expert had based his Report on fundamentally false assumptions supplied by Mr. Spolter, and the Expert completely disavowed his Report when the true nature of the case assignment system was, for the first time, made known to him. DE 211, Hearing Transcript pp. 90-121, 139-142; see also DE 205, pp. 51-53 (discussing this point). Spolter knew this long before filing the Motions and appearing for the hearing; at the very least he learned of it when he received Mr. Larimore's letter in March. Decency and respect for Magistrate Judge Rosenbaum's time demanded that he admit the same and move to cancel the hearing and spare the Court, the attorneys, and the Clerk's office staff the time and expense of attending to his baseless allegations. Instead, the transcript reflects that Mr. Spolter proceeded to persist with meandering questions that had no bearing on the issue at hand. Reading the transcript, it is a testament to Magistrate Judge Rosenbaum's patience and judicial temperament that she allowed the hearing to persist as long as it did. Mr. Spolter cannot claim that he did not have his day in court; indeed, Judge Rosenbaum gave him every opportunity to make his case.

As noted above, Mr. Spolter's only evidence in support of his Motions was his Expert. The fact that he called Mr. Larimore only detracted from his case. He spent the better part of the examination bickering with Mr. Larimore about what the ideal case

21

assignment system would be, until Magistrate Judge Rosenbaum reminded Mr. Spolter that the witness was there only to testify regarding what the case assignment system actually is and whether it was manipulated.   After Mr. Spolter failed to present any evidence in support of his position, the Clerk's Office put on its clinic on the integrity and workings of the case assignment system. Magistrate Judge Rosenbaum then made her finding that there was no evidence to support Mr. Spolter's accusation that the case assignment system was manipulated.

After announcing her finding from the bench, she gave Mr. Spolter the option to proceed or continue the hearing for the opportunity to marshal evidence and prepare his argument. He requested two weeks to prepare a further defense to the first two findings that she was directed to make. Due to scheduling conflicts only a one-week extension was available, and it was given. In fairness to Mr. Spolter, the Record reflects that Judge Rosenbaum announced her finding late in the afternoon. But the purpose of the extension was for Mr. Spolter to prepare a defense: the same defense that he should have been prepared to present at the time he filed the Motions.

The second day of hearings was limited to determining Mr. Spolter's purpose in filing the motions: rather than presenting a defense that he thought would take two weeks to prepare, Mr. Spolter stood on his pleadings. There was no justification, no apology, nothing to suggest he saw his error and felt a modicum of

embarrassment or remorse; he was indignant to the end.

If Mr. Spolter was honest and earnestly seeking the truth in these matters in good faith, as soon as the truth of the case assignment system was brought out at the hearing and his Expert disavowed the Report, Mr. Spolter should have apologized and moved to withdraw the Motions. But he did not choose a mature or honest course of action that any attorney operating in good faith would have chosen. Instead, he persisted with the assertion that he was justified in his filings. Such behavior speaks volumes to the bad faith that motivated Mr. Spolter's filing and prosecution of his Motion (DE 156). He may at times have had a professional tone, especially in the hearing with Magistrate Judge Rosenbaum, but the balance of his behavior, particularly in his filings, is grossly unprofessional to say the least.

B.

Aside from that behavior, which establishes both an improper purpose and subjective bad faith, it is important to note how the Motions To Recuse and the delay that attached to them fell within the grander scheme of Mr. Spolter's cases. 5A Wright & Miller, Federal Practice & Procedure: Civil 3d § 1335 (2009) (discussing a pattern of abusive litigation activity).  In Bettis and Gossard, Mr. Spolter waited until after Judgment was entered in favor of the Defendants to seek my recusal; in Sabatier the Court was already affirmed by the Court of Appeals and the Mandate had been returned before he sought recusal. What the Motions To Recuse did was

23

prolong the already final litigation.

The Motions To Recuse filed in <u>Bettis</u> and <u>Gossard</u> were embedded in his Motions For Reconsideration. And the timing of these Motions was calculated: in Mr. Spolter's own words, his training and experience in statistics alerted him to the fact that all was not right. DE 211, Hearing Transcript p. 6. This happened sometime before his FOIA request, dated March 6, 2009. In fact, his supposed confirmation, the fallacious Expert's Report, was prepared on April 8, 2009, a week before the Court issued its ruling on summary judgment in <u>Bettis</u>. DE 155. These Motions and arguments gave every indication of serving a three-fold purpose. First, they furthered his public attacks against a member of the Judiciary. Second, they were also nothing short of an attempt to intimidate the Judiciary into recusal or into granting the Motions For Reconsideration. Third, they placed an additional financial burden on Defendants. Defendants in these cases must wonder why their attorney's fees in routine employment-discrimination cases are so high; this would be especially true in <u>Sabatier</u> where they already stood vindicated by the Court of Appeals.

These Motions are the tell-tale sign of a vexatious litigant. 28 U.S.C. § 1927. The Motions To Recuse were not filed until after Mr. Spolter had lost his cases. And the timing of this and the nature of the pleadings signal an attorney who would drive the opposing side into a settlement by making the cost of litigation prohibitively expensive. General Counsel at Toys "R" Us and JP

24

Morgan would likely shudder at the thought of continuing litigation against Mr. Spolter: even when Mr. Spolter's client loses in the District Court and Court of Appeals, he can still manage to drag on the case and rack up fees. Indeed, Mr. Spolter has added a new chapter in the book of slash-and-burn litigation; he would not only take on opposing counsel but the Judiciary as well.

The timing of these motions bespeaks an attorney who will not follow the proper course in litigating his cases, who has no regard for Orders of the Court and decisions of the Court of Appeals, and who instead pursues every avenue of harassment in hopes that a settlement-out-of-exhaustion is reached by a cost-conscious defendant. This constant and calculated delay, cloaked in vexatious and baseless filings, speaks to Mr. Spolter's bad faith.

IV.

Mr. Spolter has made much of the Court referring this matter to Magistrate Judge Rosenbaum for an evidentiary hearing, and a brief comment on this point is necessary. See DE 217. Mr. Spolter argues that holding an evidentiary hearing was improper, but a review of Mr. Spolter's Motion (DE 156) seeking my recusal and disqualification in these cases establishes that Mr. Spolter himself wanted a public airing of his allegations concerning the alleged "rigging" of the Court's blind, random assignment system. D.E. 156-2 at 8. Indeed, he asserted that "'[t]he suggestion that the case assignment process is being manipulated for motives other than the efficient administration of justice casts a very long

25

shadow . . . . Such charges, to the extent they are being raised, must not remain unexamined and unanswered.'" Id. (quoting Cruz v. Abbate, 812 F.2d 571, 573-74 (9th Cir. 1987)).

The Order of Referral made available to Mr. Spolter all Clerk's Office personnel he requires to prove his contentions. Moreover, he was on notice that he was "to present testimony and other evidence giving factual support for the allegations . . . concerning the undersigned's supposed manipulation of the blind, random case assignment system." DE 173, p. 4. Mr. Spolter was free to call any witness he wanted in support of his Motions. Indeed, he called the Court Administrator and Clerk of the Court Steven Larimore and Spolter's own Expert. If there was anyone else with information to support Mr. Spolter's allegations, he was on notice that he was free to call them. Id.

The evidentiary hearing was ordered in response to Mr. Spolter's request and to fully develop the record in these cases, to "ensure the Parties' and the public's confidence in an honest and independent judiciary, and to determine the truth of the matters at issue." DE 173, p. 2. There was nothing improper about investigating Mr. Spolter's claims, giving him a public forum to air his evidence, and allowing him to set forth his factual basis for making the allegations contained in his Motions.

To the extent that Mr. Spolter objects to the hearing on the basis that it was a Rule 11 hearing, it is of no moment. Mr. Spolter has attempted to read into Eleventh Circuit case law a

statement that is not there. In his objection, he states:

> First, the Order of Referral made no reference to Rule
> 11, nor was any Rule 11 motion pending at the time of the
> Order of Referral. Second, under Rule 11, the Court may
> initiate a *sua sponte* Rule 11 proceeding only by issuing
> an order to show cause. Fed. R. Civ. P. 11(c)(3); *see,*
> *e.g., Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251,
> 1255 (11th Cir. 2003).

DE 217, p. 3. The phrase "only by issuing an order to show cause"
does not appear in the text of Rule 11, and it does not appear in
the text of Kaplan. Rather, the Advisory Committee notes to Rule 11
and the Eleventh Circuit case law establish that the "initiating
court must employ (1) a "show-cause" order to provide notice and an
opportunity to be heard." Kaplan, 331 F.3d at 1255. Clearly,
nothing in Rule 11 or the governing caselaw prohibits "a
proceeding" before a show cause order; the caselaw merely prohibits
imposing sanctions prior to a show cause order.

And there is no question that the Court's Order of Referral
alerted Mr. Spolter to the fact that he needed to produce evidence
to establish that his Motion was licit under Rule 11. The question
remaining and the one for which the Court is contemporaneously
issuing an Order To Show Cause is whether sanctions should be
imposed for engaging in such conduct. There is nothing improper in
the Court directing Magistrate Judge Rosenbaum to make findings as
to whether Mr. Spolter violated Rule 11, and her doing the same, by
inquiring whether his filings were not factually and legally
justified, or filed for an illegitimate purpose.

27

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Objections filed in each of the above-styled causes Renee Bettis v. Toys "R" Us, Inc., Case No. 06-80334-CIV-ZLOCH (DE 217); Gossard v. JP Morgan Chase & Co., Case No. 08-60565-CIV-ZLOCH (DE 109); Sabatier v. Suntrust Bank, Case No. 06-20418-CIV-ZLOCH (DE 118); Paul v. D & B Tile of Hialeah, Inc., Case No. 09-60259-CIV-ZLOCH (DE 41) be and the same are hereby **OVERRULED**;

2. The Report and Recommendation (DE 205) filed herein by United States Magistrate Judge Robin S. Rosenbaum be and the same is hereby approved, adopted, and ratified, with the additional comments of the Court made in this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this   5th   day of August, 2009.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

The Honorable Robin S. Rosenbaum
United States Magistrate Judge

All Counsel of Record in the above-styled causes